IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

JEFFERSON COUNTY COMMISSION;
PATRICIA NOLAND, as an individual
and on behalf of all others similarly situated;
and DALE MANUEL, as an individual and
on behalf of all others similarly situated,

        Plaintiffs, and

THORNTON COOPER,

        Intervening Plaintiff,

v.                                            Civil Action No. 3:11-CV-96
                                                      (KING, BAILEY, BERGER)

NATALIE E. TENNANT, in her capacity as
the Secretary of State; EARL RAY TOMBLIN,
in his capacity as the Chief Executive Officer
of the State of West Virginia; JEFFREY KESSLER,
in his capacity as the Acting President of the
Senate of the West Virginia Legislature; and
RICHARD THOMPSON, in his capacity as the
Speaker of the House of Delegates of the
West Virginia Legislature,

        Defendants.

## ORDER REGARDING TRANSFER OF VENUE

On this day, the above-styled civil action came before this Court for consideration of the more convenient venue for adjudication of this matter. For the reasons explained below, this Court concludes that the Southern District of West Virginia is the more convenient venue.

1

## **BACKGROUND**

This action challenges the constitutionality of the West Virginia Legislature's recent reapportionment of the congressional districts for the State's delegation to the United States House of Representatives. Residents from the Second Congressional District contend that the new reapportionment has diluted their vote. A three-judge panel has been convened pursuant to 28 U.S.C. § 2284.

Based upon the 2010 Census, West Virginia was assigned three seats in the United States House of Representatives in accordance with the Constitution of the United States. During the spring and summer of 2011, the West Virginia State Senate Redistricting Committee ("SSRC"), chaired by State Senator John Unger, II, held a number of public hearings across the state to obtain public comment on redistricting the congressional districts. Following the conclusion of these hearings, the First Extraordinary Session of the 2011 Legislature was convened. On August 5, 2011, the Legislature passed Senate Bill No. 1008, which amended W.Va. Code § 1-2-3 by moving Mason County from the Second Congressional District to the Third Congressional District. The bill was subsequently signed into law by then Acting Governor Earl Ray Tomblin.

Pursuant to Enrolled Senate Bill No. 1008, West Virginia is divided as follows. The First Congressional District, with a population of 615,991, consists of Barbour, Brooke, Doddridge, Gilmer, Grant, Hancock, Harrison, Marion, Marshall, Mineral, Monongalia, Ohio, Pleasants, Preston, Ritchie, Taylor, Tucker, Tyler, Wetzel, and Wood Counties. The Second Congressional District, with a population of 620,862, consists of Berkeley, Braxton, Calhoun, Clay, Hampshire, Hardy, Jackson, Jefferson, Kanawha, Lewis, Morgan, Pendleton, Putnam, Randolph, Roane, Upshur, and Wirt Counties. The Third

Congressional District, with a population of 616,141, consists of Boone, Cabell, Fayette, Greenbrier, Lincoln, Logan, Mason, McDowell, Mercer, Mingo, Monroe, Nicholas, Pocahontas, Raleigh, Summers, Wayne, Webster, and Wyoming Counties. As reapportioned, the Second Congressional District is the most populous of the three districts, exceeding the population of the First Congressional District by 4,871.

Pursuant to W.Va. Code § 3-5-7(c), all West Virginia candidates for the United States House of Representatives must file their respective "certificates of announcement" no earlier than January 9, 2012, and no later than January 28, 2012.

On November 4, 2011, the Jefferson County Commission, Patricia Noland, and Dale Manuel (collectively, the "Jefferson County residents" or the "plaintiffs") sued the above-named defendants in the United States District Court for the Northern District of West Virginia, Martinsburg Division. The Complaint [Doc. 1] contains three counts. In Count I, the plaintiffs claim that the congressional districts violate the Constitution of the United States, including the Equal Protection Clause of the Fourteenth Amendment, "by depriving [them] and all other citizens in West Virginia's Second Congressional District by placing them in an overpopulated congressional district and thus diluting their vote." (Id. at ¶ 34). In Counts II and III, the plaintiffs claim that the congressional districts violate the West Virginia Constitution. First, the plaintiffs assert that the variance in population between the Second and First Congressional Districts violates Article I, Section 4 of the West Virginia Constitution, which requires that the congressional districts "contain as nearly as may be, an equal number of population." (Id. at ¶¶ 37-38). Second, the plaintiffs allege that the size of the Second Congressional District, which "runs the entire width of the State from Jefferson County, in the tip of the Eastern Panhandle to Jackson County, on the Ohio

3

River," violates the same provision, which also requires that the congressional districts "shall be formed of contiguous counties, and be compact." (Id. at ¶¶ 40-41). As relief, the plaintiffs ask this Court to, *inter alia*, convene a three-judge panel pursuant to 28 U.S.C. § 2284, declare the existing congressional districts unconstitutional, and adopt a plan offered in the Legislature that is most compact and has the least variance in population. (Id. at 7-8).

On November 22, 2011, Thornton Cooper, as an interested and affected citizen, moved to intervene as a plaintiff [Doc. 8]. In support of his motion, Cooper claimed that the Jefferson County residents did not adequately protect his interests because their alternative redistricting plans may involve the division of Kanawha County, where he resides. On November 30, 2011, this Court permitted Cooper to intervene as a matter of right pursuant to Federal Rule 24(a)(2) of Civil Procedure [Doc. 13]. Thereafter, Cooper filed his Complaint [Doc. 15], which included as exhibits three alternative redistricting plans that he had previously proposed to the SSRC.

On December 1, 2011, defendants Jeffrey Kessler and Richard Thompson filed a Joint Answer [Doc. 14] to the Jefferson County residents' Complaint. In the last paragraph thereof, the defendants "request that the Court, pursuant to 28 U.S.C. 1404(a), transfer this action to the United States District Court for the Southern District of West Virginia at Charleston for the convenience of the majority of the parties, the Court, and the majority of Counsel." (Id. at ¶ 45). Then, on December 6, 2011, this Court entered a Scheduling Order [Doc. 23] to govern the adjudication of this matter. Among other things, this Court indicated that it would receive testimony and/or hear oral argument beginning on December 27, 2011, in Elkins or Charleston, West Virginia. (Id. at 2).

## DISCUSSION

### I. Applicable Standard

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The threshold question of a § 1404(a) analysis, therefore, is whether the judicial district to which transfer is sought qualifies under the applicable venue statutes as a judicial district where the civil action "might have been brought." If the Court answers this initial question in the affirmative, the Court must make an "individualized, case-by-case consideration of convenience and fairness." ***Toney v. Family Dollar Store, Inc.***, 273 F.Supp.2d 757, 763 (S.D. W.Va. 2003) (quoting ***Stewart Org., Inc. v. Ricoh Corp.***, 487 U.S. 22, 29 (1988)). In making a § 1404(a) analysis, this Court has broad discretion. ***Nichols v. G.D. Searle & Co.***, 991 F.2d 1195 (4th Cir. 1993).

### II. Analysis

#### A. This Civil Action "Might Have Been Brought" in the Southern District of West Virginia.

As relevant here, 28 U.S.C. § 1391 provides:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may . . . be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . , or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). Applying § 1391(b) to this case, there is no question that this civil action could have been brought in the Southern District of West Virginia. Not only do all of the defendants reside in that district, but also the Legislature voted to pass Bill No. 1008 in Charleston, within the Southern District of West Virginia, where it was then signed into

law. Having overcome the initial threshold question, this Court must now consider the convenience of the respective venues.

### B. The Southern District of West Virginia is the More Convenient Venue.

To determine the more convenient venue, this Court is obliged to address the following factors: (1) the ease of access to sources of proof; (2) the convenience of parties and witness; (3) the cost of attendance for witnesses; (4) the availability of compulsory process; (5) the interest in having localized interests decided at home; and (6) the interests of justice. As explained below, this Court concludes that these factors weigh in favor of a transfer to the Southern District of West Virginia.

#### 1. The Ease of Access to Sources of Proof

"Documents may be transferred from one district to another district with little difficulty, using electronic means of duplication and transmission." *Local Union No. 3 IBEW v. GE Int'l, Inc.*, 2011 WL 1842239, *3 (S.D.N.Y. May 9, 2011) (citing *Eres N.V. v. Citgo Asphalt Refining Co.*, 605 F.Supp.2d 473, 481 (S.D.N.Y. 2009)). Here, there is no indication that the documents involved will be voluminous or difficult to convert into electronic form for electronic distribution. Accordingly, this factor is probably neutral.

#### 2. The Cost and Convenience of Parties and Witnesses

The entity charged with redistricting congressional seats after each decennial census is the West Virginia Legislature, which sits in Charleston, within the Southern District of West Virginia. As a result, the majority of the witnesses will be located therein. Although the plaintiffs reside in the Northern District of West Virginia, the defendants are state officers whose residence, in their official capacity, is in Charleston. *See Barnett v. Alabama*, 171 F.Supp.2d 1292, 1295 (S.D. Ala. 2001) (making substantially similar findings

6

in action challenging Alabama's redistricting for its seats to U.S. House of Representatives after 2000 census); *cf.* W.Va. Code § 14-2-2 (requiring that certain claims against state officers or agencies be adjudicated in the Circuit Court of Kanawha County). Moreover, Cooper, the intervening plaintiff, also resides near Charleston. Accordingly, this factor weighs in favor of a transfer of venue.

### 3. The Availability of Compulsory Process

If venue is maintained in the Northern District of West Virginia, the hearing in this matter will be held in Elkins. Pursuant to Federal Rule 45(b)(2) of Civil Procedure, compulsory process is available within a 100-mile radius of Elkins. As noted above, the majority of witness will be located in Charleston, which is outside of that radius. Accordingly, this factor weighs in favor of a transfer of venue.

### 4. The Interests of Justice

Finally, this Court must consider the interests of justice, "'an analysis encompassing those factors unrelated to witness and party convenience.'" ***Original Creatine Patent Co., Ltd. v. Met-Rx USA, Inc.***, 387 F.Supp.2d 564, 571 (E.D. Va. 2005) (quoting ***Acterna, L.L.C. v. Adtech, Inc.***, 129 F.Supp.2d 936, 939-40 (E.D. Va. 2001)). This factor includes such considerations as the following: (a) a court's familiarity with the applicable law (especially relevant, for example, in cases in which the claims involve interpretation of another state's statutes or another court's jurisprudence); (b) the location where the claims at issue arose and any consequent local interest in resolving the case locally; and (c) the relative congestion of the courts' dockets. *See **Original Creatine**,* 387 F.Supp. at 571 (citing ***Intranexus, Inc. v. Siemens Medical Solutions Health Servs.***, 227 F.Supp.2d 581, 583 (E.D. Va. 2002)).

Here, these considerations do not weigh in favor of any particular district. First, even if transferred, the composition of the three-judge panel will remain unchanged. As such, the Court's familiarity with the applicable law is the same in either district. Second, no matter the venue, the case will be resolved locally, within the State of West Virginia. Third, due to the agreed expedited nature of the proceedings, the relative congestion of the courts' dockets will not become an issue. Accordingly, this factor is neutral.

## CONCLUSION

For the foregoing reasons, this Court concludes that the Southern District of West Virginia is the more convenient venue. Accordingly, if no sustainable objection is made by **December 14, 2011, at 5:00 p.m.**, this civil action shall be **TRANSFERRED** to that venue.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: December 8, 2011.

*Cheryl Dean Riley*
CHERYL DEAN RILEY
CLERK OF COURT

Entered at the direction of Chief Judge Bailey, with the concurrences of Circuit Judge King and District Judge Berger.

8