IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**JEFFERSON COUNTY COMMISSION;**
**PATRICIA NOLAND,** *as an individual*
*and behalf of all others similarly situated*;
**and DALE MANUEL,** *as an individual and*
*behalf of all others similarly situated*,

    Plaintiffs, and

**THORNTON COOPER,**

    Intervening Plaintiff,

**v.**         **Civil Action No. 2:11-CV-989**
    **(KING, BAILEY, BERGER)**

**NATALIE E. TENNANT,** *in her capacity as*
*the Secretary of State*; **EARL RAY TOMBLIN,**
*in his capacity as the Chief Executive Officer*
*of the State of West Virginia*; **JEFFREY**
**KESSLER,** *in his capacity as the Acting*
*President of the Senate of the West Virginia*
*Legislature*; **and RICHARD THOMPSON,** *in*
*his capacity as the Speaker of the House of*
*Delegates of the West Virginia Legislature*,

    Defendants.

## RESPONSE BRIEF BY THORNTON COOPER.

**Thornton Cooper**, the Intervening Plaintiff, hereby submits his **response brief** **i**n the above-captioned case.

1

Mr. Cooper will be responding to the 33-page Joint Opening Brief of Defendants Jeffrey Kessler and Richard Thompson.  Their brief, Document 42, was filed on December 20, 2011.

Most of the discussion in this response brief will be addressed to those Defendants' attempts to compare a 1972 redistricting case with the one now before this Court.

Beginning on page 2 of their brief, those Defendants attempt to compare the population variance **among three (3) congressional districts** in the congressional redistricting plan set forth in Enrolled Senate Bill No. 1008 -- in which the most populous district, the Second Congressional District, with a population of 620,862, exceeds the population of the least populous district, the First Congressional District, with a population of 615,991, by **4,871** people, or **0.78862%**, of the ideal population of 617,665 --  with the  population variance **among four (4) congressional districts** in the plan reviewed by a three-judge court in *West Virginia Civil Liberties Union v. Rockefeller*, 336 F. Supp. 395 (S. D. W. Va. 1972).

If one begins with the premise that no county in West Virginia is going to be split between or among different congressional districts, which always has been the premise in West Virginia **before 2011**, then comparing a congressional redistricting plan that has the smallest **possible** population variance between the most populous and least populous districts among **four (4) congressional districts** with a congressional redistricting plan that has smallest possible population variance between the most populous and least populous districts among **three (3) congressional districts** is like comparing **apples with oranges**.

Why is this so?

If no county is to be divided between or among different congressional districts, then a political cartographer such as Mr. Cooper is limited to a **maximum** of 55 building blocks (one per county) with which to design a congressional redistricting plan. Actually, the number of building blocks is even smaller than that.

First, let us examine the Northern Panhandle, in which the counties are laid out like segments of a tapeworm.  Within West Virginia, (a) Hancock County touches only Brooke County, (b) Brooke County touches only Hancock and Ohio Counties, (c) Ohio County touches only Brooke and Marshall Counties, and (d) Marshall County touches only Ohio and Wetzel Counties.   On the other hand, Wetzel County touches several counties other than Marshall County.   Because the combined population of Hancock, Brooke, Ohio, Marshall, and Wetzel Counties is considerably less than one third of the state's population and because counties in a congressional district must be contiguous, the combined territory of Hancock, Brooke, Ohio, Marshall, and Wetzel Counties may not be divided between or among different congressional districts.  All five of those counties must be located in the same congressional district.   Therefore, when it comes to building congressional districts, those five counties are, in effect, but one building block.   That results in a net loss of four (5–1) separate building blocks.   Thus, the original 55 building blocks are reduced by four to 51 building blocks.

Next, let us examine the Eastern Panhandle, in which the easternmost counties are also laid out somewhat like segments of a tapeworm.  Within West Virginia, (a) Jefferson County touches only Berkeley County, (b) Berkeley County touches only Jefferson and Morgan Counties, and (c) Morgan County touches only Berkeley and

3

Hampshire Counties.  On the other hand, Hampshire County touches at least two counties other than Morgan County.  Because the combined population of Jefferson, Berkeley, Morgan, and Hampshire Counties is considerably less than one third of the state's population and because counties in a congressional district must be contiguous, the combined territory of Jefferson, Berkeley, Morgan, and Hampshire Counties may not be divided between or among different congressional districts.  All four of those counties must be located in the same congressional district.  Therefore, when it comes to building congressional districts, those four counties are, in effect, but one building block.  That results in a net loss of another three (4-1) separate building blocks.  Thus, the original 55 building blocks are reduced to 48 building blocks.  (55 – 4 -- 3  =  48.)

If a county is not split between or among different congressional districts, a political cartographer is left with only 48 building blocks.  If there are **four** congressional districts, the average number of such building blocks with which he or she may construct a congressional district is **12**.  (48 ÷ 4 = 12.)  However, if there are **three** congressional districts, the average number of such building blocks with which he or she may construct a congressional district is **16**.  (48 ÷ 3 = 16.)

For the same reason that the more small bills and coins one has in a particular sum of money, the easier that it is for him or her to divide that sum of money equally, the larger the number of building blocks that a political cartographer has to choose from and to arrange in constructing a congressional district, the easier it is for him or her to approach numerical equality among congressional districts.

Although the decision in *West Virginia Civil Liberties Union v. Rockefeller*, *supra*, did not actually state the population variance between the most populous district and

4

the least populous district in the closest of the 17 plans that were offered during the redistricting process following the 1970 Census, the implication in that decision is that that variance between the most populous and the least populous congressional districts in that closest plan was several thousand people, but less than the population variance of **3,430** in the plan adopted by the Legislature.  *See, Rockefeller*, 336 F. Supp. at 390.

On the other hand, when the number of congressional districts in West Virginia dropped from four (4) districts to three (3) districts after the 1990 Census, it was possible to design a number of congressional redistricting plans in which the population variance between the most populous and least populous congressional districts was measured in the hundreds or even less.   This was because there were more building blocks per congressional district (an average of 16 building blocks per district instead of 12 building blocks per district).

Therefore, the population variances between and among congressional districts in the various plans reviewed by the Legislature were overall much smaller in 1991 than in 1971.   The plan adopted by the Legislature in 1991contained congressional districts with populations of 598,056, 597,921, and 597,500, and a population variance of only **556.**  *See, Stone v. Hechler*, 782 F. Supp. 1116, 1120, 1130 (N. D. W. Va. 1992).  The plan submitted by Mr. Cooper in1991 contained congressional districts with populations of 597,819, 597,834, and 597,824, and a population variance of only **15.**  *Id.* at 1120, 1131.

In 2011, all of Mr. Cooper's congressional redistricting plans have population variances of **528 or less** between the most populous and least populous districts.

*Rockefeller* is also inapplicable here for another reason.  In that case, involving a redistricting plan in which five congressional districts would be replaced by four congressional districts, the plaintiffs did not want the three-judge court to adopt any of the plans submitted to the Legislature that had variances that were below the 3,430 variance in the plan that the Legislature had adopted:

> . . . Plaintiffs base their assertion that House Bill 929 is unconstitutional on the fact that other redistricting plans with lesser variances were possible but were rejected; however, they decline to be identified with, or to advocate the adoption of, any of these plans.  [*Rockefeller*, 336 F. Supp. at 397.]

Instead, the plaintiffs in that case wanted the district court to declare the redistricting bill invalid and void and to block the Secretary of State from implementing the 1971 redistricting plan unless and until the districts were legally reconstituted.  If the districts were not legally reconstituted, the plaintiffs wanted the state's congressional races to be held at large.  *Id.* at 396.

Why would those plaintiffs take such a position?

When Mr. Cooper reviewed this case and related documents about thirty years ago, his conclusion was that there was concern that the residences of Congressman Ken Hechler and that of another member of Congress (who resided in Mercer County) had been placed in the same district.  As Mr. Cooper recalls the plans that were submitted to the Legislature, one of the plans with a smaller population variance would have put Congressman Hechler's residence and that of Congressman John Slack, who lived in Kanawha County, in the same district.  The plaintiffs, or someone connected with them, wanted all congressional candidates to run at large.  An at-large election (which, Mr. Cooper submits, would have been inappropriate) would, in the opinions of some political observers, have given Congressman Hechler a better chance to get

6

elected. As it turned out, however, he still defeated the incumbent from Mercer County in the Democratic primary election in 1972 under the plan that the district court upheld in *Rockefeller.*

In any event, Mr. Cooper has already requested that this Court adopt one of his four plans. He does not want an at-large election. He is clearly identified with, and advocates the adoption of, those plans (or one of them).

Moreover, Mr. Cooper is of the opinion that it is appropriate for the Court to take judicial notice of the **West Virginia Blue Book** as an authoritative source for information relating to the populations of West Virginia's congressional districts over the past several decades.

According to page 283 of the **1956** edition of the **West Virginia Blue Book**, there were then **six (6)** congressional districts in West Virginia. The Sixth Congressional District, consisting of Boone, Kanawha, Logan, and Raleigh Counties, and represented by Congressman Robert C. Byrd, with a population of 446,466, was the most populous district. The First Congressional District, consisting of Brooke, Hancock, Marion, Marshall, Ohio, Taylor, and Wetzel Counties, and represented by Congressman Robert H. Mollohan, with a population of 279,954, was the least populous district. Therefore, in 1956, the population variance from the most populous to the least populous districts was **166,512**.

According to page 473 of the 1963 edition of the **West Virginia Blue Book**, there were then **five (5)** congressional districts in West Virginia. The First Congressional District, consisting of thirteen (13) counties, and represented by Congressman Arch A. Moore, Jr., with a population of 408,794, was the most populous district. The Fifth

Congressional District, consisting of seven (7) counties, and represented by Congresswoman Elizabeth Kee, with a population of 324,926, was the least populous district.  Therefore, in 1963, the population variance from the most populous to the least populous districts was **83,868**.

According to page 449 of the 1974 edition of the **West Virginia Blue Book**, there were then **four (4)** congressional districts in West Virginia.  The Fourth Congressional District, consisting of eight (8) counties, and represented by Congressman Ken Hechler, with a population of 437,595, was the most populous district.  The Third Congressional District, consisting of fourteen (14) counties, and represented by Congresswoman John M. Slack, Jr., with a population of 434,165, was the least populous district.  Therefore, in 1974, the population variance from the most populous to the least populous districts was **3,430**.

It is important, therefore, to understand *Rockefeller* in the appropriate historical context of making progress, one decade after another, toward exact numerical equality among congressional districts in West Virginia.

Those Defendants, on page 2 of their brief, also make the interesting argument that removing Mason County from the Second Congressional District has somehow made it more compact.

Mr. Cooper asserts that the Second Congressional District is not compact.  The removal of Mason County will do very little to reduce the radius of the smallest circle that would circumscribe that district.  On the other hand, the removal of Mason County, and of other counties, from that district will reduce its area from the area that it used to have.  Under the Reock test for compactness, the area of the district is the numerator

8

of the fraction.  The area of the smallest circumscribing circle is the denominator.  Therefore, under the Reock test, the removal of Mason County will probably make the Second Congressional District less compact, not more compact.  Furthermore, the addition of Mason County to the Third Congressional District may make the latter district less compact under some of the tests for compactness.

On pages 3 and 4 of their brief, those Defendants would make it appear that the Legislature enacted the redistricting legislation in 1982 with little fanfare.   To the contrary, the redistricting was done as a result of a lawsuit filed in late 1981 by John Cooper, Esq., brother of Thornton Cooper, on behalf of Ginger Brookover (a resident of Monongalia County) and of other plaintiffs, against A. James Manchin, then Secretary of State.  Although the ruling was not "published" in a bound volume of the Federal Supplement, a three-judge court ruled that the plan adopted in 1971 was unconstitutional under the 1980 Census.

In 1982, the Legislature enacted a new statute several weeks after Judge K. K. Hall indicated his willingness to implement one that Thornton Cooper had designed.  Thornton Cooper was a witness in the case.   A discussion of part of the federal case is set forth in *Manchin v. Browning*, 170 W. Va. 779, 296 S.E.2d 909 (1982), and its footnotes. (However, one of the footnotes incorrectly listed the lead plaintiff's surname as "Gingerbrook", rather than Brookover.)

Mr. Cooper does not know how long the federal courts maintain their files.  If federal courts do maintain files from 1981, then the record of that case should be available to this court.

While there are a number of other assertions in those Defendants' brief with which Mr. Cooper takes issue, he will have the opportunity to address those during oral argument.

His failure to address those assertions herein should not be interpreted as his agreement with those assertions.

          **THORNTON COOPER**

          **Intervening Plaintiff**

          **Pro Se**

/s/ Thornton Cooper
Thornton Cooper (WVSB No. 823)
3015 Ridgeview Drive
South Charleston, WV  25303
 (304) 744-9616 (home)
thornbush@att.net

Dated:  December 22, 2011

10

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**JEFFERSON COUNTY COMMISSION;
PATRICIA NOLAND,** *as an individual
and behalf of all others similarly situated*;
**and DALE MANUEL,** *as an individual and
behalf of all others similarly situated*,

      Plaintiffs, and

**THORNTON COOPER,**

      Intervening Plaintiff,

v.                                **Civil Action No. 2:11-CV-989
(KING, BAILEY, BERGER)**

**NATALIE E. TENNANT,** *in her capacity as
the Secretary of State*; **EARL RAY TOMBLIN,**
*in his capacity as the Chief Executive Officer
of the State of West Virginia*; **JEFFREY
KESSLER,** *in his capacity as the Acting
President of the Senate of the West Virginia
Legislature*; **and RICHARD THOMPSON,** *in
his capacity as the Speaker of the House of
Delegates of the West Virginia Legislature*,

      Defendants.

**CERTIFICATE OF SERVICE.**

    I, Thornton Cooper, Intervening Plaintiff, do hereby certify that on December 22, 2011, I electronically filed the foregoing **RESPONSE BRIEF BY THORNTON COOPER**

11

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following CM/ECF participants:

David M. Hammer, Esq.
Hammer, Ferretti & Schiavoni
408 West King Street
Martinsburg, WV  25401
Phone: (304) 264-8505
Fax: (304) 264-8506
dhammmer@hfslawyers.com
Counsel for Plaintiffs;

George E. Carenbauer, Esq.
Steptoe & Johnson
P. O Box 1588
Charleston, WV  25326
Phone: (304) 353-8000
Fax:  (304) 353-8180
George.Carenbauer@steptoe-johnson.com
Counsel for DefendantJeffrey Kessler;

Stephen G. Skinner, Esq.
Skinner Law Firm
P. O. Box 487
Charles Town, WV  25414
Phone:  (304) 725-7029
Fax:  (304) 725-4082
sskinner@skinnerfirm.com
Counsel for Plaintiffs;

Anthony J. Majestro, Esq.
Cynthia A. Majestro, Esq.
Powell & Majestro, PLLC
405 Capitol Street, Suite P-1200
Charleston, WV 25301
Phone:  (304) 346-2889
Fax:  (304) 346-2895
amajestro@powellmajestro.com
cmajestro@powellmajestro.com
Counsel for Defendant Richard Thompson; and

Thomas W. Rodd, Esq.
Assistant Attorney General
Office of the Attorney General
812 Quarrier Street, 6th Floor
Charleston, WV  25301
Phone: (304) 558-5830
Fax: (304) 558-5833
twr@wvago.gov
Counsel for Defendants Natalie E. Tennant and Earl Ray Tomblin.

/s/ Thornton Cooper
Thornton Cooper (WVSB No. 823)
3015 Ridgeview Drive
South Charleston, WV  25303
(304) 744-9616 (home)
thornbush@att.net