IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

**JEFFERSON COUNTY COMMISSION;**
**PATRICIA NOLAND,** *as an individual*
*and behalf of all others similarly situated;*
**and DALE MANUEL,** *as an individual and*
*behalf of all others similarly situated,*

        Plaintiffs, and

**THORNTON COOPER,**

        Intervening Plaintiff,

v.                                     Civil Action No. 2:11-CV-0989
                                          (KING, BAILEY, BERGER)

**NATALIE E. TENNANT,** *in her capacity as*
*the Secretary of State;* **EARL RAY TOMBLIN,**
*in his capacity as the Chief Executive Officer*
*of the State of West Virginia;* **JEFFREY**
**KESSLER,** *in his capacity as the Acting*
*President of the Senate of the West Virginia*
*Legislature;* **and RICHARD THOMPSON,** *in*
*his capacity as the Speaker of the House of*
*Delegates of the West Virginia Legislature,*

        Defendants.

## PLAINTIFFS' RESPONSE TO DEFENDANTS' REQUEST FOR A STAY

An application under FRCP, Rule 62(c) necessarily goes to the discretion of the court. This Court should examine:

        (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits;

        (2) whether the applicant will be irreparably injured absent a stay;

1

>   (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and
>
>   (4) where the public interest lies.

Hilton v. Braunskill, 481 U.S. 770, 776, 107 S.Ct. 2113, 2119 (1987).[1]

All four defendants apply for a stay. The plaintiffs contend that these applicants for a stay must be considered separately in two distinct groups: 1) The Governor and the Secretary of State [the Executive branch] who have the duty to enforce the congressional redistricting plan codified at W. Va. Code § 1-2-3; and, 2) the West Virginia Senate and the West Virginia House of Representatives [the Legislative branch] who have the responsibility for passing a bill to enact a congressional redistricting plan that complies with federal and state constitutional requirements. *See* W. Va. Const. art. 1, § 4.

**The Executive Branch Defendants**

The Governor and Secretary of State in separate but substantively identical filings waived their right to make any further submissions in this case and stipulated that they would be bound by the results of the instant case without further participation. The Secretary of State stated:

> The Defendant Natalie E. Tennant wishes to rely upon the Plaintiffs and the other Defendants in the instant case to prepare and submit a Joint Statement of Stipulated and Disputed Facts, and to file briefs that frame and argue the issues in the instant case to this Court, and she wishes to rely upon her Answers to assert her position in the instant case; she believes that she does not need or wish to make additional submissions to this Court beyond those Answers, and she hereby waives her right to do so; **and she stipulates that the issues in the instant case may be resolved and that she will be bound by the results of the instant case without**

---

[1] The 1987 Hilton decision articulated the first factor in this test as requiring the applicant to make a "strong showing that he is likely to succeed on the merits." The applicants here rely upon a 1970 decision by the Fourth Circuit in Long v. Robinson, 432 F.2d 977 (4th Cir. 1970) that articulated the first factor somewhat differently as requiring the applicant to show that it "would likely prevail on the merits of the appeal." The distinction is not dispositive here.

> **her further participation in briefing, argument, or submitting evidence or testimony.**

*Statement, Motion, and Stipulation by West Virginia Secretary of State Natalie E. Tennant Regarding Joint Statement of Disputed and Undisputed Facts, Briefing, and Testimony* ([Doc. 35] at 2, ¶ 2) [boldface added]. For the Governor's substantively identical statement *see Statement, Motion, and Stipulation by West Virginia Governor Earl Ray Tomblin Regarding Joint Statement of Disputed and Undisputed Facts, Briefing, and Testimony* ([Doc. 39] at 2, ¶ 2). These two waivers and stipulations were accepted by the Court for good cause shown. *See* Doc. 44 (granting Secretary Tennant's motion); Doc. 46 (granting Governor Tomblin's motion). Thus, having agreed to be bound by the results of the instant case and having waived participation in the case itself, both the Secretary of State and the Governor lack standing to claim that they will be irreparably injured if a stay is not granted. The Sec. of State and the Governor cannot make a strong showing that they are likely to prevail on the merits when they have abandoned participating upon the merits.

Indeed, in her official capacity Secretary Tennant has made her position regarding the Court's <u>Memorandum Opinion and Order</u> abundantly clear on the official website of the West Virginia Secretary of State:

> "I am confident that West Virginia can achieve equal populations in its congressional districts," Secretary Tennant said. "The Court has shown with this ruling that equal representation of all citizens in Washington is most important."
>
>     \*    \*    \*
>
> "The Secretary of State's Office was not part of the legislative redistricting process **and accepts the determination that the process did not produce a constitutional result.**"

http://www.sos.wv.gov/news/topics/electionscandidates/Pages/FederalPanelAnnouncesDecision.aspx . Exhibit 1 [boldface added].[2]

Being **"confident that West Virginia can achieve equal populations"** after reviewing this Court's Memorandum Opinion and Order and having **accepted the determination of the Court that the process did not produced a constitutional result**, the Executive branch cannot satisfy the first two Hilton factors.

As to the third factor (substantial injury to other interested parties) and fourth factor (where the public interest lies) there should be no debate that the Legislature is not substantially injured by having the option to enact constitutional congressional redistricting legislation. Enacting constitutional legislation is the *raison d'etre* for the Legislature. It makes no sense for the Legislature to claim to be substantially injured by having the option to fulfill its constitutional purpose. The injured interested parties are in fact and as a matter of constitutional law the plaintiffs and the public which have been deprived of their constitutional rights to equal protection of the laws embodied in the principle of "one person, one vote." Memorandum Opinion and Order ([Doc. 68] at 21 *citing* Wesberry v. Sanders). That constitutional injury is irreparable and substantial with each passing congressional election and thus the unconstitutionally drawn congressional districts must be corrected in one manner or another[3] before the January 28, 2012 deadline for congressional candidates to file for office.[4]

The plaintiffs respectfully submit that the Executive branch defendants here, being the only parties to this litigation with enforcement responsibility that was enjoined

---

[2] The printed attachment is not cleanly formatted as is the online version of this statement.
[3] See the defendants' options set forth in Memorandum Opinion and Order ([Doc. 68] at 31).
[4] Various other deadlines follow in February and March until the primary election on May 8, 2012. For example, February 10, 2012 is the deadline for a political party to nominate a candidate for the primary should no candidate file. *See Answer and Statement Regarding Election Deadlines by the Defendant West Virginia Secretary of State Natalie E. Tennant* ([Doc. 26] at 6 – 7, paras. 44 (A) – (G)).

by the <u>Memorandum Opinion and Order</u> ([Doc. 68] at 30 "The enforcement of section 1-2-3 by the defendants is therefore permanently enjoined.") do not have standing to seek a stay or appeal and cannot establish that a stay should issue in consideration of the four <u>Hilton</u> factors.

**<u>The Legislative Branch</u>**

The West Virginia House and Senate do not have standing to seek a stay of the permanent injunction. The House and Senate were not enjoined from any action within their authority by the permanent injunction issued against *enforcement* of W. Va. Code § 1-2-3 [2011] because the legislative branch does not have the constitutional authority to enforce the law. To the contrary, the legislature's authority to enact constitutional legislation is completely unencumbered by the permanent injunction; indeed, the Court deferred further action with respect to a remedy for the constitutional defects in section 1-2-3 to *allow* the legislature the opportunity to act. <u>Memorandum Opinion and Order</u> ([Doc. 68] at 31).

In August of 2011 it took a single day for the Senate and House to pass SB 1008. In considering the amount of time necessary for the Legislature to enact new redistricting legislation in response to the Court's decision, if indeed it even chooses to act which is unknown at this time, the undisputed testimony at trial was that all of the regional statewide meetings have been concluded, the Select Committee has a had a full opportunity to be informed of its constitutional obligations in redistricting by Professor Bastress,[5] and new redistricting maps could be generated in seconds. To the extent that the Legislature may contend that generating a map with zero variance that respects

---

[5] The transcribed testimony of which is a part of the official record of the Senate should any member desire to refresh their recollection by reading such testimony. Doc. 42 at Ex. O.

5

county lines is a more difficult proposition than it attempted during the several days that it took in August 2011 to pass a redistricting bill, the plaintiff's attach hereto a map generated by the Redistricting Office at the request of Senator Snyder that has zero variance, largely respects county lines, and would appear to be compact. Exhibit 2 [Snyder 1B Zero Variance 2012]. The plaintiff also attach an "alternate Perfect Plan" that keeps the home residences of the three elected congressional representatives in separate districts (as under the enjoined redistricting plan), has zero population variance, and cuts across the county lines of only two rural counties thus leaving Kanawha and Harrison counties intact. Exhibit 3. The plaintiffs respectfully suggest either of these two alternate plans as options for the Court to consider on January 17th should the Legislature fail to act and submit these plans as further evidence of how simple it is for the Legislature to meet federal and state constitutional redistricting requirements.

The defendants mistakenly assert that even if the Legislature were to enact a new plan the plaintiffs must still be given the opportunity to assess and offer comment to the Court and thus they contend there is insufficient time to implement a redistricting plan. ([Doc. 70] at 3). To the contrary, footnote 14 of the Memorandum Opinion and Order ([Doc. 68] at 31; "paragraph (2) (b)") is clear: plaintiffs will only have the right to comment upon a plan submitted under paragraph (2) (b).

In this case, in addition to the opportunity for the Legislature to enact a constitutional redistricting plan, the Speaker of the House and Senate President also have the option to present the Court with "one or more alternative plans approved by the defendants for the Court's consideration as an interim plan." The paragraph (2) (b) option is even less demanding of time than enacting a new bill. *Cf.* Sandusky County

Democratic Party v. Blackwell, 340 F.Supp.2d 810 (D.C. OH 2004) (Secretary of State was not entitled to a stay pending appeal of a district court order preliminarily enjoining the application of the directive implementing the provisional voting provisions of the Help America Vote Act because compliance did not appear to be difficult and the Secretary could draft alternative variations of a properly revised directive). It is entirely the defendants' choice as to whether to avail themselves of the (2) (b) option to submit alternate plans, but defendants should not be heard to cause their own supposed harm by failing to exercise the options provided to them by the Court. If the defendants submit alternate plans for the Court's consideration under paragraph (2) (b) the plaintiffs are certain that they can comment rapidly, if they comment at all. But the Legislature, being encourage to act by virtue of the Court's deferral of further action to January 17th, is simply not irreparably injured and has not suffered substantial injury of any kind so as to justify a stay.

The Speaker and Senate President also claim that there is "public" and "private" opposition to the Court's decision as a reason to stay the Order. The Defendants do not explain what they mean by "private" opposition. The "public" opposition seems largely to relate to the Kanawha County Commission's dissatisfaction.[6] The Defendants forget that the Plaintiff Jefferson County Commission, a bipartisan five member commission, voted unanimously to bring this suit evidencing its dissatisfaction with the *status quo.*. It

---

[6] The Charleston Gazette reported that "commissioners are more concerned that splitting the county would put some residents in congressional districts within areas of the state with whom they have little in common. 'I don't know anyone in East Bank who drives to Bluefield every day for work," said (Commissioner) Hardy, noting that Unger's plan would lump some Kanawha County residents in with residents of southern counties. http://wvgazette.com/News/201201050231. The Plaintiffs note that the distance between East Bank and Bluefield is 89 miles. There was apparently no discussion at the Kanawha commission meeting of the 300+ mile driving distance between Charleston and Charles Town and the dissimilarities between the communities of interest.

also appears that the legislative defendants have not reviewed the videos of the public meetings where private citizens manifested clear public displeasure at the current congressional districting.[7]

To date and despite the alleged "public" and "private" opposition to the Court's decision, the Governor has not exercised his right to call the Legislature to a special session to take up the issue of congressional redistricting as was done in August, 2011. But the Legislature's regular session will convene on January 11, 2012[8] at noon and it thus has ample time, relative to the amount of time in session it required for its August redistricting effort, to enact a constitutional plan for congressional redistricting before January 17, 2012 when the Court will, if necessary, identify an interim plan. Thus, the defendant House and Senate should not be heard to complain that the amount of time is has to act is too short.

Just as discussed with regard to the Executive branch, the plaintiffs and the public will be substantially injured if the constitutional defects in W. Va. Code § 1-2-3 [2011] are not corrected. Thus, none of the Hilton factors favor granting a stay to these defendants.

---

[7] The videos of the Eastern Panhandle public meetings can be found at
http://www.youtube.com/watch?v=x0muL3QDsQo&feature=related which includes comments from former Congressman Harley Staggers, Jr., http://www.youtube.com/watch?v=x29uaJPxIQY&lr=1&ob=5 ,and
http://www.youtube.com/watch?v=ZmkfuRmp3ek&feature=plcp&context=C317050bUAOEgsToPDskIms4ZMSRmeaJ7bMnyOhnJc

[8] http://www.legis.state.wv.us/

8

WHEREFORE, for the foregoing reasons the plaintiffs respectfully request that the defendants' motion for a stay be denied.

Dated this the 9th day of January, 2012.

Respectfully submitted,

/s/ David M. Hammer
David M. Hammer, Esq.
(WV #5047)
Hammer, Ferretti & Schiavoni
408 West King Street
Martinsburg, WV 25401
(304) 264-8505
(304) 264-8506 (fax)
Email: dhammer@hfslawyers.com


/s/ Stephen G Skinner
Stephen G. Skinner, Esq.
(WV # 6725)
PO Box 487
Charles Town, WV 25414
(304) 725-7029
(304) 725-4082(fax)
Email: sskinner@skinnerfirm.com

Counsel for Plaintiff Jefferson County Commission, Patricia Noland, and Dale Manuel

9

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JEFFERSON COUNTY COMMISSION;
PATRICIA NOLAND, *as an individual
and behalf of all others similarly situated*;
and DALE MANUEL, *as an individual and
behalf of all others similarly situated*,

        Plaintiffs, and

THORNTON COOPER,

        Intervening Plaintiff,

v.                                 Civil Action No. 2:11-CV-0989
                                 (KING, BAILEY, BERGER)

NATALIE E. TENNANT, *in her capacity as
the Secretary of State*; EARL RAY TOMBLIN,
*in his capacity as the Chief Executive Officer
of the State of West Virginia*; JEFFREY
KESSLER, *in his capacity as the Acting
President of the Senate of the West Virginia
Legislature*; and RICHARD THOMPSON, *in
his capacity as the Speaker of the House of
Delegates of the West Virginia Legislature*,

        Defendants.

## CERTIFICATE OF SERVICE

       I, David M. Hammer, hereby certify that on January 9, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system evidencing electronic service of *"Plaintiff's Response to Defendants' Request for Stay*  upon the following counsel of record:

                Stuart Thornton Cooper
                3015 Ridgeview Drive
                South Charleston, WV 25303
                Counsel for Intervenor Plaintiff

George Carenbauer
Steptoe & Johnson, PLLC-Charleston
PO Box 1588
Charleston, WV 25326
Counsel for Defendant Jeffrey Kessler

Cynthia Majestro
Powell & Majestro
405 Capitol Street, Suite P-1200
Charleston, WV 25301
Counsel for Defendant Richard Thompson

Thomas Rodd
Assistant Attorney General
Office of the Attorney General
812 Quarrier St 6th Floor
Charleston, WV 25301
Counsel for Defendant Natalie Tennant

/s/ David M. Hammer
David M. Hammer, Esq. (WV #5047)
Hammer, Ferretti & Schiavoni
408 West King Street
Martinsburg, WV 25401
(304) 264-8505
Counsel for Plaintiff Jefferson County
Commission, Patricia Noland, and Dale
Manuel