```
         IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

JEFFERSON COUNTY COMMISSION; PATRICIA NOLAND, as an individual and on behalf of all others similarly situated; and DALE MANUEL, as an individual and on behalf of all others similarly situated,

      Plaintiffs, and

THORNTON COOPER,

      Intervening Plaintiff,

v.                          Civil Action No. 2:11-CV-0989

NATALIE E. TENNANT, in her capacity as the Secretary of State; EARL RAY TOMBLIN, in his capacity as the Chief Executive Officer of the State of West Virginia; JEFFREY KESSLER, in his capacity as the Acting President of the Senate of the West Virginia Legislature; and RICHARD THOMPSON, in his capacity as the Speaker of the House of Delegates of the West Virginia Legislature,

      Defendants.

**ORDER DENYING DEFENDANTS' EMERGENCY MOTION**
<u>**FOR STAY OF JUDGMENT PENDING APPEAL**</u>

      Before the Court is the Defendants' "Emergency Motion for Stay of Judgment Pending Appeal" (the "Motion"), filed January 6, 2012. The Motion, made pursuant to Federal Rule of Civil Procedure 62(c), requests a stay of the January 3, 2012 Order

(the "Order"), incorporated within the Memorandum Opinion superseded by Order of Amendment entered the following day, that declared West Virginia Code section 1-2-3 unconstitutional and permanently enjoined the statute's enforcement. By their Response filed January 9, 2012, the Plaintiffs oppose the Defendants' request for a stay.[1]

The Defendants intend to seek review of the Order in the Supreme Court of the United States. Toward that end, they request that the Order be suspended pending appeal, particularly insofar as it would implement an interim plan for congressional apportionment supplanting section 1-2-3 in the event that the State of West Virginia declines to enact or present for our

---

[1] The Plaintiffs have reminded us of Governor Tomblin's previous stipulation "that the issues in the instant case may be resolved and that he will bound by the results of the instant case without his further participation in briefing, argument, or submitting evidence or testimony." Statement, Motion, and Stipulation by West Virginia Governor Earl Ray Tomblin Regarding Joint Statement of Disputed and Undisputed Facts, Briefing, and Testimony at ¶ 2; see Response at 2-3. Secretary Tennant submitted a virtually identical stipulation, and, according to the Plaintiffs, she has issued through her website a public statement to the effect that her Office "accepts the determination that the [apportionment] process did not produce a constitutional result." Id. at 3-4 (citation omitted). The Plaintiffs theorize that the Governor and Secretary of State have therefore waived the right to further contest the Court's injunction against enforcement of section 1-2-3, and, concomitantly, that Speaker Thompson and President Kessler, who are not responsible for the statute's enforcement, lack standing in their own right to seek a stay. Although the Plaintiffs make an interesting point, we are content to dispose of the Motion on its merits as to all Defendants.

consideration, on or before January 17, 2012, an alternative that satisfies the requirements of the Constitution. In ruling upon the Motion, we are bound to evaluate:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Hilton v. Braunskill, 481 U.S. 770, 776 (1987).

With respect to the merits, the Defendants will be charged on appeal with persuading the Supreme Court that the State's enacted variance of 0.79% remains substantively tolerable in a national environment where variances much closer to true zero are the norm. Beyond that substantial hurdle, however, the Defendants will have to convince the Court that the Legislature, which made no findings attempting to justify the variance, was entitled to neglect its procedural responsibility in the face of clear Court precedent obliging it to demonstrate that "a particular objective required the specific deviations in its plan, rather than simply relying on general assertions." Karcher v. Daggett, 462 U.S. 725, 741 (1983).

At trial, his counsel candidly expressed Speaker Thompson's position that "Karcher was a bad idea . . . we think Justice White got it right in the dissent." Transcript of Proceedings of December 28, 2011, at 43. Among the Defendants, President

3

Kessler evidently agrees with Speaker Thompson's assessment of the Supreme Court's decision, as they forecast that their appeal will be "based upon their judgment that [the Order] is incorrect on the merits." Memorandum in Support of Emergency Motion for Stay ("Memorandum") at 3. On the other hand, Governor Tomblin and Secretary Tennant represent that they will participate in the appeal only "insofar as it seeks reversal of the interim remedy" described above, i.e., the potential imposition of an interim apportionment plan on or after January 17, 2012. Id. at 3 n.1. In particular, Secretary Tennant "remains neutral on the merits of the constitutionality" of section 1-2-3 "and will not join in on an appeal on that basis." Id.

As an Article III court, of course, we are obliged to ply our trade within the realm of the "what is" and not venture into the "what-ought-to-be." Although the Supreme Court could concur in Speaker Thompson's endorsement of Justice White's position nearly thirty years after the fact and ultimately overrule Karcher, we would hardly characterize counsel's hopeful musings to that effect as the "strong showing" required to justify a stay.

Nonetheless, we are acutely sensitive that "'legislative apportionment plans created by the legislature are to be preferred to judicially constructed plans.'" Memorandum at 7 (quoting Karcher v. Daggett, 455 U.S. 1303, 1307 (Brennan,

4

Circuit Justice 1982) (granting stay pending appeal)). Indeed, we have attempted to faithfully apply that precept by affording the State a reasonable time to fashion a substitute for section 1-2-3, and by providing for the State to smoothly and expeditiously supersede any judicially imposed plan with a constitutional plan of its own making. See Order at 31-32 (emphasizing that "we are loath to devise on our own a redistricting plan for the State of West Virginia").

By establishing an initial two-week window for corrective action on a redistricting plan, we hoped to facilitate the State's implementation of a plan that Secretary Tennant could administer within the existing statutory framework. See, e.g., W. Va. Code § 3-5-7(c) (requiring that certificates of announcement by congressional candidates be filed "not later than the last Saturday in January next preceding the primary election day"); id. § 3-5-9 (mandating that Secretary certify candidates "[b]y the eighty-fourth day next preceding the day fixed for the primary election"). The filing of an appeal by the Defendants likely makes it more difficult (or even impossible) for Secretary Tennant, county officials, and potential candidates for Congress to comply with the current deadlines, but that is a choice reserved for the State, which certainly has the ability to modify those deadlines in aid of its litigation strategy.

5

Put succinctly, the decision to appeal appears to manifest the Defendants' determination that the State's congressional elections may be procedurally bifurcated from those contesting other offices and efficiently administered in a more fluid manner. In light of the Defendants' display of confidence, we no longer perceive any pressing need, in the absence of State action, to impose a remedy by a specified time. Therefore, reiterating our strong preference that the State act on its own behalf in redistricting, we shall defer any and all action with respect to a remedy until after the Supreme Court has disposed of the Defendants' forthcoming appeal. The State, however, continues to be enjoined from conducting its 2012 congressional elections pursuant to section 1-2-3 as currently enacted.[2]

---

[2] Judicial comity also weighs in favor of suspending further action while the matter is pending appeal. An appeal generally "divests the district court of control of those aspects of the case involved in the appeal." Marrese v. Am. Acad. of Orthopaedic Surgeons, 470 U.S. 373, 379 (1985); cf. United States v. Christy, 3 F.3d 765, 767-68 (4th Cir. 1993) ("'[It is] generally understood that a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously.'") (quoting Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982)). Though we possess the putative authority to "suspend, modify, restore, or grant an injunction on terms . . . that secure the opposing party's rights," Fed. R. Civ. P. 62(c), we are nevertheless not empowered "to adjudicate anew the merits of the case." Natural Res. Def. Council, Inc. v. Southwest Marine, Inc., 242 F.3d 1163, 1166 (9th Cir. 2001). Consequently, "any action taken pursuant to Rule 62(c) may not materially alter the status of the case on appeal." Id. (citation and internal quotation marks omitted).

By our decision to further defer imposition of a remedy, the Defendants will suffer no irreparable injury. The Supreme Court may reject their appeal, after which we expect the State to enact a constitutional plan. Or the Court may accept the appeal and ultimately vacate our Order, which may have the effect of reinstating current section 1-2-3. In either event, Secretary Tennant will no doubt have endured a certain amount of aggravation and inconvenience from having to accommodate and implement a plan on relatively short notice. That injury, though unfortunate, has not been shown irreparable as of today, almost four full months prior to the primary election scheduled for May 8, 2012. As a matter of fact, the Plaintiffs have convincingly demonstrated to the contrary through the submission with their Response of two alternative plans, apparently generated by the State's Redistricting Office within the past few days. Each of these alternatives presents a near-zero variance equivalent to the so-called "Perfect Plan," and each thus appears to satisfy the "one person, one vote" mandate of <u>Karcher</u>, while also accommodating many of the State's non-constitutional political concerns. <u>See</u> Response at 5-6.

Although a final remedy is forestalled, the continuing injunction against current section 1-2-3 reemphasizes the vindication of the Plaintiffs' (and the Intervening Plaintiff's) rights and helps to ameliorate any injury they and the citizens

7

of West Virginia may suffer by virtue of the delay occasioned by the Defendants' decision to pursue an appeal.[3] Through ensuring, on the Plaintiffs' behalf, that West Virginia's 2012 congressional elections are not conducted pursuant to a constitutionally defective apportionment plan, and at the same time accommodating to the fullest extent possible the Defendants' (and the Court's) desire that any substitute plan be of State origin, the public interest is thereby also served. In view of all the circumstances, we are persuaded to exercise our discretion in favor of DENYING the Defendants' Motion, but the Order is MODIFIED as aforesaid.

It is so ORDERED.[4]

DATED:   January 10, 2012.

_____
ROBERT B. KING
United States Circuit Judge

_____
IRENE C. BERGER
United States District Judge

---

[3] See Response by Thornton Cooper in Opposition to Motion for Stay at 5 (maintaining that "Mr. Cooper, as a voter, will be harmed if either the 2001 or the 2011 congressional redistricting plan is allowed to be used").

[4] This order, in the same fashion as the one to be appealed, is entered by a majority of this three-judge Court. Our distinguished friend Judge Bailey, having dissented from entry of the Order awarding the Plaintiffs declaratory relief, would grant the Motion and stay that Order.